JUDGE GARDEPHE

13 CV 5116

ANDREW M. CALAMARI
REGIONAL DIRECTOR
Leslie Kazon
Paul G. Gizzi
Karen M. Lee

SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Suite 400
New York, New York 10281-1022
212-336-0107 (Kazon)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,      :
                                          :
                    Plaintiff,            :
                                          :
         - against -                      :
                                          :
JORGE BRAVO, Jr.,                         :    COMPLAINT
                                          :
                    Defendant.            :
                                          :
------------------------------------------------------------x

Plaintiff Securities and Exchange Commission alleges as follows:

### SUMMARY

1. From April 2009 until May 2010 Bravo unlawfully sold millions of shares of stock of AVVAA World Health Care Products, Inc., a microcap company, in unregistered transactions. Bravo obtained the shares through "wrap around agreements." The wrap around agreements involved debts that AVVAA supposedly owed to its officers, affiliates, or other persons closely associated with the company ("Affiliates"). Under the wrap around agreements, the Affiliates assigned the debts AVVAA purportedly owed to them to third-party investors such as Bravo, and AVVAA consented to the assignment and agreed to modify the terms of the

original debt obligation so that the debt now owed to the third-party investor was immediately convertible by the investor into shares of AVVAA common stock. In exchange, the third-party investor was obligated to pay to the Affiliate the amount of the debt assigned. Bravo and the other investors exercised their conversion rights simultaneously with, or shortly after, the execution of the wrap around agreements.

2. Bravo entered into three wrap around agreements with AVVAA as a result of which he obtained approximately 96 million shares of AVVAA common stock. He promptly sold 93 million of the shares into the public market, for total proceeds of approximately $523,000, using approximately $131,000 of the proceeds to pay the amounts due to the Affiliates under the wrap around agreements.

3. The AVVAA wrap around agreements were not the first in which Bravo had participated. In 2008, Bravo had raised money through wrap around agreements for a public microcap company that he controlled. Those wrap around agreements, and the sales of the stock issued under them, were the subject of a Commission enforcement action filed in September 2009, *SEC v. K&L International Enterprises, Inc.*, 6:09-cv-1638-GAP-KRS (M.D. Fla. Sept. 24, 2009), SEC Litigation Release No. 21224 (Sept. 28, 2009). Bravo testified in the investigation that led to the filing of the *K&L* case and, although neither he nor his company was named as a defendant in the case, he was aware that the case had been filed. Even after he testified in the investigation, and even after he knew that the *K&L* case had been filed, Bravo continued to participate in AVVAA wrap around agreements and illegally sold into the market millions of AVVAA shares that he had obtained as a result of the wrap around agreements.

## JURISDICTION AND VENUE

4.     The Commission brings this action pursuant to the authority conferred by Section 20 of the Securities Act ("Securities Act") [15 U.S.C. § 77t]. The Commission seeks a final judgment (i) permanently restraining and enjoining Bravo from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c)]; (ii) ordering Bravo to pay disgorgement and prejudgment interest; (iii) imposing civil money penalties on Bravo pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; and (iv) prohibiting Bravo from engaging in any offering of penny stock pursuant to Section 29(g) of the Securities Act [15 U.S.C. §77t(g)].

5.     This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)]. Defendant, either directly or indirectly, has made use of the means or instruments of transportation or communication in interstate commerce and of the mails in connection with the acts, practices, and courses of business alleged herein.

6.     Venue lies in the Southern District of New York pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)]. Currently and throughout the relevant period, AVVAA's shares are and have been quoted on the OTC Markets Group Inc., formerly known as Pink OTC Markets Inc., or the "Pink Sheets," which is located in New York, New York. Accordingly, many of the acts, practices and courses of business alleged herein took place in New York, New York.

## DEFENDANT

7.     **Jorge Bravo, Jr.**, age 50, is a resident of Weston, Florida. He is and was at all relevant times, the president and chief executive officer of Cross Atlantic Commodities, Inc., a public company located in Weston, Florida, that purportedly develops, markets, and distributes "specialty quality of life enhancement products."

## THE ISSUER

8. **AVVAA World Health Care Products, Inc.** is a Nevada corporation that purports to be "a global biotechnology company that specializes in effective, all natural, therapeutic skin care products that improve quality of life and well being (sic) for consumers and their pets." During the relevant period, the company was located in Vernon, British Columbia, Canada; in late 2011 or early 2012, the company relocated to Richmond, Virginia. On January 10, 2008, AVVAA filed a Form 15 terminating its registration of common stock under Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act"). Before then, AVVAA was an Exchange Act reporting company, and its stock traded on the OTC Bulletin Board. Since then, it has not had a class of securities registered with the Commission and has not been an Exchange Act reporting company; instead its shares are and have been quoted on the Pink Sheets.

## FACTUAL BACKGROUND

9. On March 20, 2009 and July 20, 2009, Bravo entered into wrap around agreements with AVVAA and the company's then chairman and chief executive officer ("CEO"). On September 4, 2009, purportedly on behalf of his stepson, Bravo entered into a wrap around agreement with the company's investor relations consultant. As discussed in Paragraph 12 below, Bravo was subsequently substituted for his stepson on the September wrap around agreement.

10. Each of the wrap around agreements provided that (a) the Affiliate – the CEO or the investor relations consultant – assigned to Bravo (or his stepson) a debt in the principal amount of approximately $50,000 owed by AVVAA to the Affiliate from a date a year or more before the date of the agreement; (b) AVVAA simultaneously issued to Bravo (or his stepson) a new note to replace the note that it had purportedly originally issued to the Affiliate; and (c) the

4

new note (the "Convertible Note") was immediately convertible into freely tradable shares of AVVAA stock, which would be issued without a restriction. The agreement recited that the debt, as then represented by the new, Convertible Note, was assigned "from the inception of the Debt."

11. The same day that he entered into the wrap around agreements, Bravo (or his stepson) exercised his right to convert the full principal amount of the Convertible Note received under the agreement and was issued shares of AVVAA common stock that did not bear a restrictive legend. Within weeks of entering into the first two agreements, Bravo began selling the AVVAA shares he received under the agreements to the public.

12. In December 2009 and January 2010, approximately four months after the execution of the September wrap around agreement involving AVVAA, the investor relations consultant, and Bravo's stepson, Bravo arranged to have the agreement amended so that he was substituted for his stepson and to have the shares that had been issued to his son transferred to himself. He also renegotiated the agreement so that he only had to pay $12,500, rather than the $50,000 originally agreed to, for the shares issued under the agreement. Approximately two months later, in March 2010, Bravo began selling those shares to the public.

13. The debts that were assigned to Bravo (or his stepson) and made convertible under the terms of the wrap around agreements were debts owed by AVVAA to the Affiliates for services rendered. The debts were not securities within the meaning of the Securities Act.

14. Although the wrap around agreements recited that Bravo had paid cash consideration for the Affiliate's assignment to him of the debt simultaneously with the execution of the agreement, Bravo had not done so. Instead, when he entered into the agreements he

understood that he could pay for the assignment out of the proceeds of the sale of the stock he received under the agreement.

15. In June 2009, Bravo testified in a Commission investigation. The subject of his testimony was wrap around agreements that he had arranged in 2008 as president and chief executive officer of Cross Atlantic Commodities, Inc. Those wrap around agreements were substantially the same as the AVVAA wrap around agreements he had entered into in March and April 2009. Indeed, before AVVAA had entered into any wrap around agreements, Bravo had discussed his prior experience with so-called debt-wrap financing with AVVAA's CEO and provided him with examples of the documents needed for the transaction.

16. In September 2009, the Commission filed an enforcement action based in part on the Cross Atlantic wrap around agreements, *SEC v. K&L International Enterprises, Inc.*, 6:09-cv-1638-GAP-KRS (M.D. Fla. Sept. 24, 2009), Litigation Release No. 21224 (Sept. 28, 2009). The Commission's complaint alleged that four issuers, including Cross Atlantic, had issued shares of common stock to the defendants named in the complaint without adhering to the registration requirements of Section 5 of the Securities Act and that the defendants, in turn, had sold the shares to the public in unregistered transactions when no exemption from registration was available. As a result of the Commission's case, on September 30, 2009, the Depository Trust Corporation suspended clearance and settlement of Cross Atlantic stock. Although neither he nor Cross Atlantic was charged by the Commission in the *K&L* case, Bravo was aware of the filing of the case.

17. Even after he testified in the investigation that led to the filing of the *K&L* case, and even after he learned that the Commission had charged the sellers of Cross Atlantic stock obtained under wrap around agreements with Cross Atlantic, Bravo continued to enter into or

renegotiate wrap around agreements with AVVAA and to sell to the public the stock he obtained as a result of wrap around agreements with AVVAA.

18.   Bravo sold approximately 93 million shares of AVVAA stock that he obtained as a result of the wrap around agreements. He received proceeds totaling approximately $523,000 from those sales and used approximately $131,000 of the proceeds to pay the Affiliates for the assignment of the debts.

19.   Bravo's sales of the AVVAA shares he received under the wrap around agreements were not registered with the Commission and there were no applicable exemptions from registration.

## CLAIM FOR RELIEF

### Violations of Sections 5(a) and (c) of the Securities Act
### (Unregistered Sales of Securities)

20.   Paragraphs 1-19 are re-alleged and incorporated herein by reference.

21.   Defendant Bravo, directly or indirectly, singly or in concert with others, (a) without a registration statement in effect as to the securities transaction, (i) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities through the use or medium of any prospectus or otherwise; or (ii) carried or caused to be carried such securities for the purpose of sale or for delivery after sale; and (b) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise securities as to which a registration statement had not been filed as to such securities. By engaging in the conduct described above, Defendant Bravo violated Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court:

1. Enter a Final Judgment:

    a. permanently restraining and enjoining Bravo from violating Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)];

    b. ordering Bravo to disgorge all ill-gotten gains wrongfully obtained as a result of his illegal conduct, plus prejudgment interest.

    c. ordering Bravo to pay a civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; and

    d.  prohibiting Bravo from engaging in any offering of penny stock pursuant to Section 29(g) of the Securities Act [15 U.S.C. §77t(g)]; and

  2.  Grant such other and further relief as the Court deems appropriate.

Dated: July 22, 2013

              Respectfully submitted,

              SECURITIES AND EXCHANGE COMMISSION

              _____
              Andrew M. Calamari
              Regional Director
              New York Regional Office
              Securities and Exchange Commission
              3 World Financial Center, Suite 400
              New York, New York 10281-1022
              Tel: (212) 336-0107 (Leslie Kazon, Assistant Regional Director)
              kazonl@sec.gov

Of Counsel:
   Paul G. Gizzi
   Karen M. Lee